BERMEA LAND AND LUMBER COMPANY v. J. B. ADOUE ET AL.

Decided March 15, 1899.

**1. Mortgage—Description of Property.**

A description of property in a mortgage by a lumber company as being a leasehold interest derived from another company, but also as including all buildings, machinery, and miscellaneous property belonging to said plant, included machinery added to the plant after the lease by the mortgaging company and then in its possession, as well as that derived from the other company under the lease.

**1. Lessor and Lessee—Mortgage.**

Where foreclosure of a mortgage made by a lessee was decreed only on the property added to the plant ·by such lessee, the validity of the lease as to claims against the lessor was not involved.

**3. Receiver's Sale—Saving Rights of Lienholders.**

Where a judgment directing sale of property by a receiver expressly saves the rights of lienholders not parties, their right to foreclose is not affected by the sale.

**4. Sheriff's Sale—Showing Title Under.**

To show title under a sheriff's sale the judgment must be produced; its recital in the order of sale is not evidence of its rendition.

**5.  Foreclosure—Forfeiture of Title.**

A mortgagor in possession of property can not defeat foreclosure by asserting that his title has been forfeited to a third party.

**6.  Briefs.**

Illegible typewritten briefs condemned.

Appeal from Dallas.  Tried below before Hon. Edward Gray.

*Branch, Garrison & Blount,* for appellant.

*Cobb & Avery,* for appellees.

Key, Associate Justice.—Appellee brought this suit to recover upon a $10,000 note executed by the Petri Lumber Company and to foreclose a mortgage executed by said company to secure the note.  The Bermea Land and Lumber Company was made a party defendant, alleged to be in possession of the property, and foreclosure of the lien was asked as against said company.

The Petri Lumber Company made no defense.  The other company filed an answer presenting the questions raised in this court.  The trial resulted in a judgment for the plaintiff against the Petri Lumber Company for the amount of the debt, and against both companies for a foreclosure of the mortgage lien.  The Bermea Land and Lumber Company has appealed.  The undisputed testimony shows, and we find, that prior to October, 1893, the Lanana Lumber Company was operating a sawmill at Lanana, in Nacogdoches County, and was indebted to the Petri Lumber Company in a large amount.  In October, 1893, the mill was burned, destroying almost the entire plant and leaving only a few articles of machinery.

October 18, 1893, in an effort to secure its debt, the Petri Lumber Company made a lease contract with the Lanana Lumber Company for the possession and use of its entire plant for a period of twenty years. By the terms of this contract the Petri Lumber Company was to rebuild and operate the plant, and out of the profits pay its debt and deliver back a two-thirds interest to the Lanana Lumber Company.  Under this contract the Petri Lumber Company received from Lanana Lumber Company the following property only:  One Shay engine; 1½ miles of tram road, 1 cart, 30 tenant houses, 2 old boilers, 1 old steam engine, 1 steam feed, 24 oxen, 1 log wagon, and a lot of old pulleys, boxes, pumps, and piping.

In November, 1893, the Petri Lumber Company took charge of the plant and mill site and went to work to rebuild the plant.  It made contracts with manufacturers to buy the necessary machinery for a complete sawmill, which was to be shipped to it as soon as the houses were ready.  Part of the machinery thus bought was a twin engine bought from the Filer & Stovall Company, of Milwaukee, Wis., and a sizer or planer bought from Hall & Brown Company, of St. Louis, Mo.  The twin

engine was shipped to the Petri Lumber Company December 22, 1893, and the sizer or planer was shipped in January, 1894. Both of these machines were usual and necessary parts of a sawmill plant, and such plant could not be properly operated without them. All of the machinery described in the plaintiff's petition and alleged to be covered by the mortgage was thus bought and paid for by the Petri Lumber Company, except the property above stated, as received by said company from the Lanana Lumber Company. All the houses, sheds, tram roads, etc., except the thirty tenant houses, were built and paid for by the Petri Lumber Company. The cost of these improvements and of rebuilding the entire plant was about $19,000.

The undisputed testimony shows that all the property covered by the decree of foreclosure was on the ground at Lanana, Texas, and in possession of the Petri Lumber Company at the time the note and mortgage sued on were executed, to wit, January 3, 1894, except the twin engine and the sizer or planer above referred to. As to whether the twin engine was then in possession of the Petri Lumber Company there is conflict in the testimony, and in support of the judgment we find as a fact that it was in the possession of said company at the time the mortgage was executed. The sizer or planer was received by the Petri Lumber Company about the 15th day of February, 1894, and was placed in and used as part of the mill.

About the first of February, 1894, the Petri Lumber Company began operating the mill, and continued to do so until March 15, 1894, when it was taken charge of by a receiver appointed by the District Court of Nacogdoches County in a suit brought by certain stockholders of the Lanana Lumber Company against the Lanana Lumber Company and the Petri Lumber Company. Adoue, the plaintiff in this suit, was not a party to that suit. The receiver operated the property until April, 1895.

On the 9th day of April, 1895, in the suit referred to, the District Court of Nacogdoches County made an order which recites the allowance of a great many claims against the Lanana Lumber Company, amongst which was one in favor of the Petri Lumber Company, which had been assigned to B. S. Wettermark, and another in favor of John Durst; and also making certain allowances to the receiver and to various other parties for material and supplies furnished the receiver, amounting in all to $5942.14.

The court then ordered all the property belonging to the Lanana Lumber Company to be sold, including the property leased by said company to the Petri Lumber Company. A commissioner was appointed to sell the property, and in pursuance of the authority conferred by the order referred to he advertised and sold the property. The decree ordering the sale and appointing the commissioner to sell, among other things, contains the following stipulation: "And it is ordered and decreed that the purchaser of said property take the same clear of all debts and incumbrances, save and except and subject to any rights and claims of

valid and bona fide lienholders, not parties to this suit, holding liens on any of the property hereinbefore mentioned and hereby ordered sold."

The sale was made by the commissioner on the 30th day of April, 1895, and was thereafter duly approved by the District Court. At this sale B. S. Wettermark became the purchaser for a consideration of $4000. (Plaintiff Adoue objected to all the testimony offered for the purpose of showing the sale of the property in the manner referred to, first, because he was not a party to the proceedings under which the sale was made; second, because the decree ordering the sale expressly reserved and protected the rights of all bona fide lienholders; and third, because said procedings were irrelevant and immaterial.)

The commissioner to sell executed a bill of sale, conveying the property referred to to the purchaser, B. S. Wettermark, May 6, 1895; and on the 21st day of May, 1895, said Wettermark executed a bill of sale conveying said property to the Bermea Land and Lumber Company for the recited consideration of $300 in cash and $19,700 in the stock of the Bermea Land and Lumber Company.

The Lanana Lumber Company had a contract with John Durst, executor and trustee of the estate of Susan M. Thorn, deceased, for the lease of the land used for the mill site, and the right to cut timber on adjacent land, which lease extended from May 22, 1893, to October 31, 1895. By the terms of this contract the Lanana Lumber Company agreed to pay a stipulated price for timber cut off of a certain tract of land adjacent to the mill site, and had the privilege of removing all improvements put on the land by it within six months after the expiration of the contract, and not thereafter. The Petri Lumber Company signed the contract as guarantor or surety for the Lanana Lumber Company. There is testimony tending to show, and we find as a fact, that subsequent to the execution of the contract referred to, and presumably about the time the note and mortgage sued on were executed, an agreement was entered into between said Durst as executor and trustee as aforesaid, and the Petri Lumber Company, by the terms of which the latter company should have the right to remove such improvements as it might place on the property referred to at any time after the expiration of the lease contract with Durst, except that Durst was to have one of the tenant houses in case of such removal.

March 23, 1895, John Durst, as executor and trustee as aforesaid, executed a deed conveying the land covering the mill site and also the land embracing the timber privilege referred to in the lease contract between Durst and the Lanana Lumber Company, to B. S. Wettermark; and on February 7, 1896, Wettermark conveyed sixty acres of said land, covering the mill site, to the Bermea Land and Lumber Comany.

It was shown that on December 26, 1893, the Petri Lumber Company executed a chattel mortgage to Geo. M. Dilley & Son to secure four promissory notes, aggregating $1400, covering certain boilers and other machinery.

January 8, 1894, said company executed to Geo. M. Dilley & Son an-

other chattel mortgage to secure the payment of six promissory notes, aggregating about $1100, upon four No. 2 diamond truck logging cars. These chattel mortgages were duly authenticated and registered in Nacogdoches County, Texas.

Appellant also introduced in evidence a certified copy from the District Court of Anderson County of an order of sale dated August 30, 1895, reciting that on the 20th day of November, 1894, Geo. M. Dilley & Son had recovered a judgment against the Petri Lumber Company for the sum of $2717.25, and that said judgment was a foreclosure of the mortgage lien on the property described in the two mortgages above referred to. This order of sale commanded the sheriff to seize and sell the property. Indorsed on the order was a return signed by the sheriff of Nacogdoches County, to whom the order of sale was directed, stating that said writ was received by him September 5, 1895, and was executed the same day by seizing and levying on the property referred to, which property was, on September 17, 1895, sold in the manner prescribed by law, at which sale the Bermea Land and Lumber Company became the purchaser for the sum of $100, that being the highest secure bid for the property. It was also shown that on November 29, 1893, the Petri Lumber Company executed a chattel mortgage in favor of the Moses P. Johnson Machinery Company, and reciting that it was given to secure two notes aggregating $1809, upon certain machinery described therein, which chattel mortgage was properly acknowledged and had been registered in Llano County, Texas, on December 4, 1893, and nowhere else.

Appellant also introduced in evidence one of the notes referred to in said chattel mortgage for the sum of $905, dated November 18, 1893, and due six months after date, payable to the order of the Moses P. Johnson Machine Company, and indorsed by said company without recourse.

Appellant also introduced in evidence three promissory notes made by the Petri Lumber Company and payable to the order of Hall & Brown Wood and Machinery Company, each for $267.98, dated March 24, 1894, and due respectively in two, four, and six months after date, and each indorsed by said company without recourse on them. (The plaintiff objected to all the testimony in reference to the several notes and mortgages above referred to in favor of Geo. M. Dilley & Son and other parties, as being irrelevant and immaterial.)

It was shown that Bermea Land and Lumber Company was organized about May 15, 1895; that about May 21, 1895, it took possession of all the property in controversy and has had possession and control of it since that time.

The mortgage sued on in this case describes the property as follows: "One certain leasehold for twenty years, executed by the Lanana Lumber Company to said Petri Lumber Company in October, 1893, as evidenced by an instrument in writing recorded in the deed records of Nacogdoches County, in volume 31, pages 51 and 52, to which reference is made for a description, and embracing a certain sawmill plant in said county, known as the Lanana Lumber Company's mill, on the Houston East &

West Texas Railroad, about eight miles south of the town of Nacogdoches on the Lanana Bayou, together with all its buildings, houses, timber rights, mill plant, machinery, engines, boilers, tram roads, cattle, wagons, and the other miscellaneous property appertaining and belonging to said plant, and all rights, privileges, and franchises of both the said Lanana Lumber Company and the Petri Lumber Company in and to said property."

The decree from which this appeal is prosecuted adjudges the plaintiff to be entitled to a foreclosure of his mortgage on all the property described in his petition, save and except the following property, which was received by the Petri Lumber Company from the Lanana Lumber Company in October, 1893, to wit: "One Shay engine (donkey) and four cars, built by Lima Locomotive and Engine Company, Lima, Ohio; one and three-fourths (1¾) miles of tram road, including eleven tons of iron; one cart; thirty (30) tenant houses (cabins); two old boilers which had been through a fire; one old steam engine 12x20, which had been through a fire; one Soule steam feed; twenty-four (24) oxen; log (ox) wagon; a lot of old pulleys and boxes, and old pumps, and old piping."

Further on the decree described the property upon which the lien is foreclosed in part as follows: "All the property had and owned by the Petri Lumber Company on said January 3, 1894, and at any time thereafter, situated at and near the station and town of Lanana, Nacogdoches County, Texas, and used during that time in connection with its saw mill, consisting of machinery, such as engines, boilers, saws, tram roads, dolly ways, saw carriages, and log cars and their fittings and connections, sheds, yokes, chains, and other appurtenances and other connections usual and necessary in running said saw mill and more particularly described as follows:" Then follows a detailed description of various engines, boilers and other pieces of property pertaining to a sawmill.

The Lanana Lumber Company was incorporated under the laws of Texas, October 17, 1891, for the purpose of owning, managing, and operating a mill plant to manufacture and sell lumber of all kinds, sizes, and shapes. The life of said corporation was limited by the terms of its charter to twenty years.

*Opinion.*—Under the first assignment of error it is contended that the mortgage does not create a lien on any property other than that formerly owned by the Lanana Lumber Company and delivered to the Petri Lumber Company in October, 1893, and that the court erred in holding that it covered any other property.

We are unable to sanction this proposition. We think it was the intention of the parties to the mortgage that it should cover the entire sawmill plant, known at the time as the Lanana Lumber Company. We believe the property referred to included the additions thereto made by the Petri Lumber Company; and as to these additions, we think the latter company had full authority to execute the mortgage, and that the

former company and those claiming under it can not defeat the rights of the mortgagee.

In response to the second assignment of error, it is sufficient to say that the court did not hold the lease contract between the Lanana Lumber Company and the Petri Lumber Company to be valid, and did not foreclose the lien upon the leasehold, but only upon the improvements and machinery placed on the property by the Petri Lumber Company.

The third assignment asserts title to all the property through the sale under the receivership proceedings referred to above. We can not concur in this proposition. The plaintiff in this suit was not a party to the receivership proceedings, and the decree ordering the sale of the property expressly reserves and protects the rights of bona fide lienholders who were not parties to that proceeding. We think appellee's claim is fully protected by the stipulation referred to, and that the title acquired through that proceeding presents no barrier to his right to foreclose his mortgage.

What has been said in reference to the first assignment is sufficient reply to the questions presented under the fourth and fifth assignments.

The sixth and seventh assignments raise the question of appellant's right under its purchase at the sheriff's sale made upon an order of sale, which refers to the judgment obtained by Geo. M. Dilley & Son against the Petri Lumber Company. To show title in this respect, it was necessary for appellant to produce a copy of the judgment in favor of Geo. M. Dilley & Son against the Petri Lumber Company. This it failed to do, and though the order of sale recites the existence of such judgment, such recital was not evidence of that fact.

The eighth assignment is addressed to the action of the court in foreclosing the mortgage lien on the sheds, boilers, houses, dry kilns, tram road, and dolly ways; the contention being that, under the contract of lease between John Durst and the Lanana Lumber Company, these improvements were forfeited to Durst, as executor and trustee, because they were not removed within six months after October 31, 1895, the time when the lease expired.

It is sufficient answer to this to say that there is testimony tending to show, and we find as a fact, that this contract was modified so as to authorize the removal of the improvements referred to at any time. Besides, the testimony shows that the property was taken from the possession of the mortgagor, the Petri Lumber Company, by a receiver appointed by the District Court of Nacogdoches County,—that it went into the possession of appellant prior to the 31st day of October, 1895, and has been in its possession ever since. Therefore, appellant being in possession of the property, holding the same adversely to appellee and his mortgagor, it should not be heard to assert a forfeiture upon the ground that the improvements have not been removed from the property within the time limited by the original contract.

We have considered all the questions presented in appellant's brief, and find no reversible error.

Before concluding, we deem it proper to refer to the manner in which this case has been presented in this court. The briefs are typewritten, and on account of defects in the mechanical work or for some other reason, it is difficult to read more than one copy of each brief, and some pages of the one copy even are very dim and almost illegible. It is a matter of surprise that a case of so much importance should be thus presented; and as this is not the first instance in which similar departures from the rules have occurred, we deem it our duty to say that if this practice is persisted in we shall feel compelled hereafter to disregard such briefs. The judgment is affirmed.

*Affirmed.*